UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FELICIA BROWN, | ) |
|                     Plaintiff | ) |
| vs. | )   Cause No. 3:15-cv-622 RLM-MGG |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
|                     Defendant | ) |

<u>OPINION AND ORDER</u>

Felicia Brown seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court reverses the Commissioner's decision and remands the matter for further proceedings consistent with this opinion.

I. Background

In January 2013, the Department of Veterans Affairs found that Ms. Brown, an Iraq war veteran, was disabled based on her service-connected schizoaffective disorder, bipolar type.[1] Ms. Brown applied for Social Security

---

[1] A disability determination by the Department of Veterans Affairs isn't binding

1

Disability Insurance Benefits later that year. The ALJ found that Ms. Brown had severe impairments, including endometriosis, schizoaffective disorder with affective disorder, anxiety disorder, and amnestic disorder, but concluded that none of Ms. Brown's impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

The ALJ determined that Ms. Brown had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with limitations.[2] While the ALJ found that Ms. Brown couldn't perform her past relevant work, he determined that she could perform other jobs, including, but not limited to, circuit board screener, eyewear assembler, and document preparer. The ALJ concluded Ms. Brown wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits.

When the Appeals Council denied Ms. Brown's request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530

---

on the Social Security Administration. Allord v. Barnhart, 455 F.3d 818, 820 (7th Cir. 2006); 20 C.F.R. § 404.1504.

[2] The ALJ concluded that Ms. Brown had the additional limitations that she could: (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) sit for six hours, stand for one hour and walk for one hour in an eight-hour workday; (3) frequently reach in all directions with the bilateral upper extremities, and frequently handle, finger, and feel; (4) frequently operate foot controls with the bilateral lower extremities; (5) occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, and stoop, kneel, crouch, or crawl; (6) make judgments on simple work-related decisions and respond to usual work situations and to changes in a routine work setting. The ALJ also limited Ms. Brown to simple, routine and repetitive tasks with minimal contact with the public and supervisors, which he indicated should be twenty-five percent or less, and occasional contact with co-workers.

U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. STANDARD OF REVIEW

The issue before the court isn't whether Ms. Brown is disabled, but whether substantial evidence supports the ALJ's decision that she isn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but, instead, must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their

assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. DISCUSSION

Ms. Brown argues that the ALJ made three errors that require remand: (1) the ALJ improperly ignored the opinions of two psychologists; (2) the ALJ's credibility determination was flawed, and (3) the ALJ didn't properly address a medical opinion that contradicted the ALJ's residual functional capacity determination. Ms. Brown asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings. Ms. Brown's first argument requires remand. While the ALJ's credibility determination might not be patently wrong, on remand the ALJ should ensure that his findings are reasoned, supported, and based only on proper factors.

*A. The ALJ's Treatment of Dr. Apel's and Dr. Wax's Opinions*

Ms. Brown argues that the ALJ erred in his treatment of the medical opinions of two psychologists. First, Ms. Brown contends that the ALJ didn't properly address the opinion of Dr. Samantha Apel, an examining psychologist. Dr. Apel diagnosed Ms. Brown with schizoaffective disorder, bipolar type and noted that she had suicidal thoughts, "significant auditory hallucinations and

4

fear of being home alone," poor concentration and memory, and "missed a lot of work" at her one-day per week job cutting hair at a nursing home "due to depressive symptoms." Based on her findings, Dr. Apel opined that Ms. Brown's "symptoms continue to be consistent with schizoaffective disorder ... worsening over the last few years[,] resulting in [an] inability to work full time or maintain healthy relationships." The ALJ's written decision doesn't provide any indication that he considered Dr. Apel's opinion; he didn't assign it any weight or address any aspect of her medical report.

The court of appeals has repeatedly called on ALJs to consider all relevant evidence, especially evidence "that would support strongly a claim of disability." O'Connor-Spinner v. Astrue, 627 F.3d 614, 621 (7th Cir. 2010). *See also* Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (recognizing that an ALJ needn't discuss every piece of evidence but "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it"); Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) ("[a]n ALJ may not selectively consider medical reports . . . but must consider all relevant evidence") (internal quotations omitted). Dr. Apel's report and her opinion are relevant to a disability determination and shouldn't have been ignored by the ALJ. The Commissioner doesn't dispute this, but argues that the ALJ wasn't required to address Dr. Apel's opinion because she opined on Ms. Brown's ability to work, which is a legal matter reserved to the Commissioner.

5

The Commissioner is correct that determining whether a claimant is able to work is a legal matter reserved to the Commissioner by law. 20 C.F.R. § 404.1527(d)(1). *See also* Garcia v. Colvin, 741 F.3d 758, 760 (7th Cir. 2013) (determining "whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician"). But reserving that determination to the Commissioner is "not the same thing as saying that such a statement is improper and therefore to be ignored." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). *See also* Garcia v. Colvin, 741 F.3d 758, 760 (7th Cir. 2013) (medical evidence related to an "applicant's physical and mental ability to work full time . . . is relevant and if presented can't be ignored").

Ms. Brown next argues that the ALJ didn't properly address consulting psychologist Dr. Alan Wax's opinion that Ms. Brown presented difficulties with simple math problems. The Commissioner responds that Ms. Brown's math limitations, mentioned on a single occasion, wouldn't prevent her from performing jobs identified by the vocational expert, which the Dictionary of Occupational Titles (DOT) classifies as mathematical level one, the lowest level identified in the DOT.

Dr. Wax indicated in his report that Ms. Brown couldn't complete serial seven subtractions from 100 and made two errors when subtracting by threes from thirty. When noting that Ms. Brown's mathematics computation score was in the bottom fourth percentile, he didn't rule out an arithmetic disorder.

6

Consulting neuropsychologist Dr. Kenneth McCoy also noted that Ms. Brown was unable to complete the serial seven subtractions and incorrectly calculated three plus four. The jobs identified by the vocational expert require an ability to perform basic addition, subtraction, multiplication, and division. *See, e.g.,* Touch-Up Screener, Printed Circuit Board Assembly, DICOT 726.684-110, 1991 WL 679616.

Despite the medical evidence of Ms. Brown's math limitations, the ALJ didn't ask her about her math abilities, orient the vocational expert to the evidence on her math limitations, or address Dr. Wax's concerns about her math limitations in his opinion. This was also an error. *See* Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (recognizing that an ALJ needn't discuss every piece of evidence but "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it"); O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010) (the ALJ must "orient the VE to the totality of a claimant's limitations"); Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009) ("the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" when a claimant appears *pro se*); 20 C.F.R. § 404.1564(b)(6) ("[w]e will ask you . . . whether you are able to . . . do at least simple calculations in arithmetic"). Because the ALJ didn't properly address the opinions of Dr. Apel and Dr. Wax, this case must be remanded.

*B. The ALJ's Credibility Determination*

Ms. Brown also contends that the ALJ's credibility determination is patently wrong because it is unsupported and unreasonable. She maintains that the ALJ impermissibly relied on her alleged noncompliance with medical treatment and improperly invoked her activities of daily living to support his adverse credibility determination. The Commissioner contends that the ALJ properly considered multiple factors in assessing Ms. Brown's credibility and accepted and accommodated most of her alleged symptoms.

An ALJ's credibility determinations "are entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005); *see also* Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir. 2007) ("[b]ecause the ALJ is in the best position to observe witnesses, [the court] will not disturb [his] credibility determinations as long as they find some support in the record"). When evaluating credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p[3]). The reviewing court must determine whether the ALJ's determination "was reasoned and supported," Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008), and shouldn't

---

[3] SSR 96-7p was superseded by SSR 16-3p on March 16, 2016. SSR 96-7p was binding on the ALJ when his opinion was issued on April 1, 2015. *See* Lauer v. Bowen, 818 F.2d 636, 640 (7th Cir. 1987).

"overturn an ALJ's credibility determination unless it is patently wrong." Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir. 2012) (quotations omitted).

The ALJ found Ms. Brown not entirely credible because she "made it clear that she was not interested in individual therapy" and "used old medications that she was told that she should not take, and has not been taking her prescribed medication." "The ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed." Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (internal citations omitted). "However, such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." Id. A brief examination of the record and applicable case law suggests that Ms. Brown might have had good reasons for not following her treatment as prescribed.

First, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." Kangail v. Barnhart, 454 F.3d 627, 630 (7th Cir. 2006). *See also* Spiva v. Astrue, 628 F.3d 346, 351 (7th Cir. 2010) (the ALJ's "reference to [the claimant] failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications"); Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006) (a mental health patient's failure to "follow through on counseling or take antipsychotic drugs regularly is a common consequence of being psychotic"). Second, Ms. Brown explained that she stopped

9

taking medication while breast-feeding her baby and, on another occasion, because of her medications' side effects. *See* Martinez v. Astrue, 630 F.3d 693, 697 (7th Cir. 2011) (noting that mental health patients may be reluctant to take their medication because of the drug's side effects).

Next, Ms. Brown argues that the ALJ improperly invoked her activities of daily living as a basis for his adverse credibility determination. The ALJ opined that he didn't find Ms. Brown's testimony regarding her limitations credible because "she testified that she could care for her young son, clean the house, cook, drive, and she traveled to Florida for three weeks."

"Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility . . . this must be done with care . . . [because] a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ can't use a claimant's "successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible . . . without acknowledging the differences between the demands of such activities and those of a full-time job." Ghiselli v. Colvin, 837 F.3d 771, 777–78 (7th Cir. 2016).

The ALJ didn't acknowledge the differences between the demands of Ms. Brown's care for her infant son, housekeeping, cooking, driving, and travel with the demands of a full-time job or Ms. Brown's limitations in performing these activities. For example, the ALJ found that Ms. Brown's ability to care for her

10

infant son undermined her allegations of disability. But the ALJ didn't acknowledge Ms. Brown's testimony that her family regularly cared for her child when her symptoms made it difficult for her to do so. Furthermore, the court of appeals has criticized ALJs' equating care for an infant with an ability to perform full-time work because "taking care of an infant, although demanding, has a degree of flexibility that work in the workplace does not." Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005).

Because this matter is being remanded on another issue, the court needn't reach any conclusions as to whether these problems render the ALJ's credibility determination patently wrong. On remand, the ALJ should re-examine the credibility determination and ensure that the finding is reasoned, supported, and based only on the proper factors. *See* Creek v. Vill. of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, (1939) (recognizing that a lower court is free to consider issues even if they weren't included within the mandate of the reviewing court).

*C. Dr. Charles Auvenshine's Testimony*

Ms. Brown's final argument is that the ALJ didn't properly address psychologist Charles Auvenshine's testimony about her ability to work. Ms. Brown complains that the ALJ didn't confront Dr. Auvenshine's testimony that Ms. Brown's mental impairments would interfere with her ability to complete a full eight-hour day of work. Dr. Auvenshine initially testified that symptoms

11

associated with depression "would interfere with her doing a full and complete day of work." The ALJ questioned Dr. Auvenshine to determine whether his testimony was that she wouldn't be able to work even with restrictions addressing Ms. Brown's limitations, asking: "are you saying she's not going to be able to function in a 40 [hour] week, five day job[?]" Dr. Auvenshine responded, "[n]o, I think she can function." Furthermore, while the ALJ didn't address this issue in his opinion, he extensively discussed Dr. Auvenshine's testimony in his decision. Therefore, the court is satisfied that the ALJ properly considered Dr. Auvenshine's opinion. *See* Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (recognizing that an ALJ needn't discuss every piece of evidence).

Ms. Brown also contends that the ALJ erred by not presenting Dr. Auvenshine's testimony that Ms. Brown shouldn't perform assembly line work to the vocational expert. Dr. Auvenshine testified that assembly line work "would not be the best choice" for Ms. Brown because of it implies working with others on the assembly line. "Working independently would be a better choice," Dr. Auvenshine opined.

While the ALJ didn't specifically include Dr. Auvenshine's reference to assembly line work in the hypothetical presented to the vocational expert, he properly accommodated that opinion by including the limitation that formed the basis for Dr. Auvenshine's concern about assembly line work: the need for some independence at work. Furthermore, while the court of appeals "generally ha[s] required the ALJ to orient the VE to the totality of a claimant's limitations," if, as

here, the record shows that the vocational expert "heard testimony directly addressing those limitations," a court can "assume[ ] a [vocational expert's] familiarity with a claimant's limitations, despite any gaps in the hypothetical." O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010).

IV. CONCLUSION

For the foregoing reasons, the court VACATES the Commissioner's decision and REMANDS this case for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED: January 13, 2017

/s/ Robert L. Miller, Jr.
Judge, United States District Court